AFFFIRMED.

---

Argued 17 July, decided 27 August, 1907.

## STATE *v.* WALTON.

13 L. R. A. (N. S.) 811; 91 Pac. 490.

APPEAL—PRESUMPTION OF VERITY OF RECORD."

1. While the records of a court may be amended, if necessary, to make them conform to the truth, it must be presumed that the record as presented by the transcript correctly shows what and all that occurred in the matter under consideration.

---

*NOTE—See also, on this point, *State* v. *McCaffrey,* 26 Or. 570 (38 Pac. 932); and *Ollschlager's Estate.* 50 Or. 55 (89 Pac. 1049.)    REPORTER.

CRIMINAL LAW—NOT DUTY OF DEFENDANT TO ASK TO PLEAD.

2. In a criminal case defendant is not obliged to demand an opportunity to plead, but it is the imperative duty of the prosecuting officer to call upon him to do so.

CRIMINAL LAW—NECESSITY OF GUARDING RIGHTS OF DEFENDANT.

3. The public has an interest in the life and liberty of all persons accused of crime, and in criminal proceedings those steps which the law prescribes cannot be dispensed with or modified even with the express consent of the accused.

CRIMINAL LAW—NECESSITY OF ARRAIGNMENT AND PLEA."

4. Under Section 1328, B. & C. Comp., requiring one charged with a crime to be arraigned and to be asked whether he pleads guilty or not guilty, and Section 1364, providing for entering the plea, it is essential to a conviction of a felony that the defendant be arraigned and that he plead or refuse to plead, though the defendant may not be affected in any degree by failing to plead.

From Multnomah: JOHN B. CLELAND, Judge.

Charles W. Walton was convicted under an indictment charging assault and robbery, and appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Henry St. Rayner*.

For the State there was a brief over the names of *A. M. Crawford*, Attorney General, *John Manning*, District Attorney, and *Gustavus Charles Moser*, with an oral argument by *Mr. Moser*.

Opinion by MR. COMMISSIONER KING.

On September 1, 1904, an information was filed by the district attorney against defendant, Chas. W. Walton, charging him with assault and robbery of one Emmanuel Johnson. It appears from the record that on the following day the information was read to defendant and a copy thereof handed to him, after which, on his request, he was given two days in which to plead. On the day fixed to plead a demurrer was filed, which, on October 5th following, was overruled, succeeded three weeks later by defendant's trial and conviction. After verdict, written objections to the sentence were filed, on the ground that defendant had not been fully arraigned, not having at any time answered, nor been given an opportunity to answer, as to

'NOTE.—See extensive annotation in 13 L. R. A. (N. S.) 811-816: Effect Upon Conviction of Failure to Give Accused an Opportunity to Plead. REPORTER.

whether he was guilty or not guilty, which were overruled, and defendant sentenced to 20 years' imprisonment.

It is immaterial whether the motion filed was intended as a motion in arrest of judgment, or an objection to further proceedings, as its contents are sufficient to call the court's attention to the alleged irregularity in the trial, and to constitute an objection to the imposition of the sentence pronounced. We are then confronted with the question as to whether the entry of a plea on behalf of the defendant is essential to the trial of one accused of felony. Defendant made no objection to the irregularity complained of until after verdict, nor does it affirmatively appear that an entry of a plea would have affected the result, or that defendant was in any manner prejudiced by the oversight. The record not only fails to disclose that any plea was entered, but it appears from affidavits in the record that he was not asked whether he desired to enter a plea of guilty or not guilty, and that at no time during the trial did defendant refuse to plead. It is urged by counsel for the state, and held by the learned court below, that such plea is not essential where no objections are made thereto during the trial, and that the alleged error is of no avail to defendant unless it appears from the record that he lost some rights by reason of a plea not having been entered. Section 1328, B. & C. Comp., indicates what shall constitute an arraignment, and is as follows:

"The arraignment must be made by the court, or by the clerk or the district attorney under its direction, and consists in reading the indictment to the defendant, and delivering to him a copy thereof and the indorsements thereon, including the list of witnesses indorsed on it or appended thereto, and asking him whether he pleads guilty or not guilty to the indictment."

It appears from the record that all the requirements of this provision were complied with, except the record does not disclose that defendant was asked "whether he pleads guilty or not guilty to the indictment."

1. If essential to a conviction of a felony that such plea must be entered before proceeding to trial, the same rule would

necessarily apply with reference to the requirements of the record of the proceedings in this respect, as under the statute making the presence of the defendant necessary during the proceedings. The rule is settled in this State that this fact must affirmatively appear in the record of the trial: *State* v. *Cartwright,* 10 Or. 193; *State* v. *Gilbert,* decided May 14, 1883 (unreported). In·the latter case two indictments were filed against the defendant, accusing him of murder. With the exception of the names of the persons alleged to have been murdered, there was no difference in the indictments. The defendant was tried under both indictments at the same term, convicted and sentenced to death; but in the journal entry of the judgment the clerk neglected to state any crime for which the conviction was had, nor was there any record of the trial indicating upon which of the indictments the defendant was tried. while both appeared in the transcript of the judgment roll. In passing upon the record, Mr. Chief Justice WATSON says: "It has been suggested that this court should presume that the proceedings in the court below were regular, and that the duplicity in the record has occurred through the inadvertence or mistake of the clerk in making up the judgment roll, of which the record before us is simply a transcript. But this judgment roll, although prepared by the clerk, is the record of the court. To it alone can we look to ascertain what the action of the court below was, and upon it determine whether any error was committed. The duty of the clerk in such matters is ministerial undoubtedly, and subject to the supervision and control of the court. But his record is the highest record of the judicial action of the court. It imports verity, and, until impeached by the court itself, is conclusive of the matters to which it relates: *Schirmer* v. *People,* 33 Ill. 276." The court accordingly held that no conditions could be presumed to exist other than as appear in such record; that the record might be amended to conform to the facts (where no adverse rights have intervened), but, since this had not been done, it would be presumed that no record of such proceedings could be made ·

50 OR. —— 10

other than as there disclosed. It follows under the decisions referred to that it is unnecessary for us to determine whether the affidavits in the record can be considered, since the record fails to disclose that Walton was given an opportunity to answer as to whether he was guilty or not guilty, or refuse to do so. His rights will, therefore, be determined under the record before us without reference to the affidavits, and it will accordingly be presumed that no plea was either made or refused.

The Criminal Code of this State provides:

"If the demurrer be disallowed, the court must permit the defendant, at his election, to plead, which he must do forthwith, or at such time as the court may allow; but if he do not plead, the judgment must be given against him." B. & C. Comp. § 1364.

A demurrer was filed by the defendant, and, after it was overruled, had he refused to plead, this provision of the statute would require judgment to have been given against him. Our statutes have these further provisions:

"An issue of fact arises (1) upon a plea of not guilty; or (2) upon a plea of a former conviction or acquittal of the same crime": B. & C. Comp. § 1375.
"An issue of law arises upon a demurrer to the indictment": B. & C. Comp. § 1376.
"An issue of law must be tried by the court, and an issue of fact by a jury, of the county in which the action is triable": B. & C. Comp, § 1377.

2. It is maintained by counsel for the State, and suggested in the decision of the circuit court, that, as a person charged with a crime is permitted at his election to plead forthwith or at such further time as may be allowed by the court, if he does not so plead, judgment must be entered against him, and that, if the defendant desires to enter a plea, it becomes his imperative duty to make it manifest, citing *People* v. *King,* 28 Cal. 265, as sustaining that view. In that case the defendant, when called upon to plead, acting on the advice of his attorney, refused to do so, whereupon the court ordered a plea of not guilty

to be entered, and impaneled a jury before which he was tried, resulting in conviction. The statute of that state, like ours, provides that, in case a defendant refuses to plead, judgment shall be entered against him. Relying on the theory that the trial was irregular because sentenced on the verdict of a jury in place of sentence by the court without such verdict, the defendant appealed. On this question the court held that the defendant was in no way injured, as he had not only had every guarantee given him by the statute, but, more than that, he had been tried by a jury, and, while it was the duty of the court to have entered judgment without a jury in the manner specified in the statute, having had a jury trial, defendant, not being injured by reason thereof, was in no position to complain.

In holding that case to be in point here the learned court below evidently overlooked the fact that the defendant in the case cited refused to plead after being given an opportunity to do so. That the trial court and counsel for the State have misapplied the authority last considered manifestly appears from later decisions on the point in that state, among which is *People* v. *Corbett,* 28 Cal. 328. The defendant there was tried and convicted of grand larceny. After being informed of the indictment, he asked and was given four days in which to plead, but did not plead on the day set for that purpose. Two weeks later he was brought into court, and through his counsel moved for a separate trial, the indictment being against him and two others. The motion was granted, a jury impaneled, witnesses sworn on behalf of defendant, and the case argued to the jury, which, after receiving their charge, returned a verdict of guilty. The court there states that there was manifestly no arraignment, that the indictment was not read to the defendant, nor a copy tendered to him, nor defendant asked whether he would plead guilty or not guilty to the indictment, and holds: "If the defendant had at any time anterior to the trial pleaded not guilty, the defects in the arraignment, or rather the omission to arraign, might have been cured, on

the ground of waiver. But neither the motion of defendant for a separate trial, nor the introduction of witnesses by him, nor the fact that the case was argued on his behalf to the jury —nor did all of them combined—cure the want of a plea. There was not only no arraignment, but over and beyond that there was no issue for the jury to try. Not only did the defendant not plead; but, inasmuch as the statute opportunity for pleading was never extended to him, he was never under any obligation to plead. A verdict in a criminal case where there has been neither arraignment nor plea is a nullity, and no valid judgment can be rendered thereon: *Douglass* v. *State,* 3 Wis. 820; 1 Wharton, § 530. And so is a verdict rendered upon a plea put in by the attorney of a party indicted for a felonious assault with intent to rob: *McQuillen* v. *State,* 8 S. & M. 587." Section 296 of the California Code (St. 1851, p. 244, c. 29) quoted in *People* v. *King,* 28 Cal. 265, which is identical with Section 1364, B. & C. Comp., quoted above, is mentioned in *People* v. *Corbett,* 28 Cal. 328, concerning which the court say: "The act does not extend to the case of a verdict where there is a plea but no indictment, nor does it reach the case of a verdict where there is an indictment but no plea. Where either of the two are wanting, it is as fatal as though both were wanting. The presence of both is essential to an issue, and, where there is no issue, an oath administered to the jury would impose no obligation, nor would false swearing on the part of witnesses amount to perjury. That a trial so conducted 'would tend to prejudice the defendant in respect to a substantial right' * * is too plain for argument."

3. It is also maintained that defendant could not have been injured by not entering a plea as to his guilt or innocence. The same could in some instances be said of a person tried for a felony and convicted without a jury, or where, being represented by counsel, he is tried and convicted in the usual manner, but without being present in person. In *State* v. *Cartwright,* 10 Or. 193, it is held, and is the universal rule, that the presence of the defendant, when tried for a felony, cannot

he waived, and is essential to a valid conviction. As stated in *Hopt* v. *Utah,* 110 U. S. 574, 579 (4 Sup. Ct. 202, 204: 28 L. Ed. 262) : "The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods." The law does not even permit the attorney of a person charged with a felony to enter a plea for him, but requires the defendant to do so in person. Even on the day set for that purpose it is not customary, nor is it expected, that the defendant shall arise and make such plea known until directed by either the court or district attorney. He would have no means of knowing when the particular time of the day or hour fixed had arrived until his attention should be called to it in the usual manner. The prisoner, as a rule, would be the last to risk incurring the court's displeasure by rising unsolicited at an improper moment to announce he was ready to plead. It is not, therefore, to be expected that the defendant should make his desire in that respect manifest until called upon to do so. The attorney might think a plea of guilty inadvisable, and yet the defendant himself, for reasons unknown to his counsel, may desire to enter such plea. His rights in this respect are such that his attorney can neither exercise nor waive for him.

The case at bar furnishes a good illustration of an instance where the public has an interest in the proper trial of the person charged with a crime. Here we have a defendant, who, when on trial, was but 17 years of age, and sentenced to 20 years' imprisonment in this case, and 5 years' additional in another case here pending. He was tried under constitutions guaranteeing that no man shall be convicted or deprived of his liberty without due process of law, and that "laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice": Const. Or. Art. I,

§ 15. Yet it is contended that he should remain imprisoned for a quarter of a century without having been convicted in the manner prescribed by our statute. If innocent, the public may need and is entitled to his services as a citizen, even though he should desire to waive all his legal rights and seek imprisonment. If guilty, not only the defendant, but the public, as stated, is entitled to any reduction of sentence or other benefits that may have been possible by the defendant showing a desire to be reformed, and throwing himself on the mercy of the court with the chance, however small it may have been, of being permitted to serve a shorter term as a convict and a longer period of his life as a reformed member of society. In the first act proposed in this country for proportioning crimes and punishments, prior to which (1778) even many small offenses were capital, it was stated that "the reformation of offenders was an object worthy of the attention of the law, and that extermination instead of reforming the accused weakened the state by cutting off so many who, if reformed, might be restored sound members to society, who, even under a course of correction, might be rendered useful in various labors for the public. * *": Jefferson's Works (ed. 1903), Vol. I, p. 218.

4. In *Elick* v. *Washington. Territory,* 1 Wash. T. 138, an Indian was tried and convicted of murder after the entry by his counsel of a plea of "not guilty." On appeal his failure to plead in person was assigned as error; and, in passing on this point, the court make the following observation: "Articles V and VI, Amendments to the Constitution of the United States, among other rights secured to the accused, declare 'the accused shall enjoy the right to be informed of the nature and cause of the accusation' against him; and, however the law may be in inferior crimes, in capital cases, when the prisoner is put upon his trial, this right cannot be waived by the counsel nor denied by the court. Nor is it an answer to this to say that a waiver of arraignment by counsel and entering a plea of not guilty by counsel secure to the prisoner all the benefits of an arraignment in person or a plea of not guilty entered by pris-

oner in person, and that thereafter prisoner should not be permitted to except to what was not to his disadvantage on the trial. The prisoner, if guilty, might consider it to his interest to plead guilty and put himself upon the mercy of the jury or court. But, whether so or not, before any man 'shall be held to answer for a capital or otherwise infamous crime,' it is absolutely indispensable that the nature of the accusation as contained in the indictment should be made known to him, that he may enjoy the privilege of ássenting or dissenting, by plea of guilty or not guilty, to the charge alleged." *State* v. *Straub,* 16 Wash. 111 (47 Pac. 227), is cited as holding to the contrary rule, but that case is not in point, and the statements there on the question here involved are mere dicta, for the reason that the defendant in that instance did, in fact, enter a plea, and the same was shown by a *nunc pro tunc* entry of an order curing the defect.

Numerous cases are cited in the opinion of the learned court below and by the State as sustaining respondent's contention, but, after a careful examination thereof, we find that, owing to the facts surrounding the various cases upon which the decisions there hinge, few are applicable to the case before us. Of the cases cited the following appear to sustain the position that the entry of a plea is not essential under all circumstances, even when the charge is for a felony: *Moore* v. *State,* 51 Ark. 130 (10 S. W. 22) ; *State* v. *Cassady,* 12 Kan. 550; *People* v. *Bradner,* 107 N. Y. 1 (13 N. E. 87) ; *Tarver* v. *State,* 95 Ga. 222 (21 S. E. 381) ; *State* v. *Winstrand,* 37 Iowa, 110. The case of *State* v. *Jerry,* 3 La. Ann. 576, decided in 1848, is probably the first on record, and *State* v. *Cassady,* 12 Kan. 550 (1874), impliedly overruled by subsequent decisions of that court, the second to hold this view. The decision in *State* v. *Jerry,* however, is not in harmony with the subsequent decisions of that state. The case of *State* v. *Chenier,* 32 La. Ann. 103, makes no reference to the State-Jerry Case, but, notwithstanding the plea was entered after the beginning and before the close of the trial, the judgment of the trial court was reversed;

the appellate court stating: "We cannot sanction such a departure from ancient landmarks in criminal procedure. The prisoner must be arraigned, and must plead to the indictment before the case is set down for trial or tried. It may be that in this particular case no prejudice was wrought to the accused. Still we think it unsafe to sanction such irregularities in capital cases." See, also, *State* v. *Hunter,* 43 La. Ann. 157 (8 South. 624) ; *State* v. *Brackin,* 113 La. 879 (37 South. 863).

It will be observed that the courts holding to the rule invoked by the plaintiff do so on the assumption that the entry of a plea is a matter of form and not of substance, while those holding to the doctrine here recognized declare the plea essential to an issue, without which there can be nothing to try. The authorities supporting the position urged by the State, with but one exception (*Martin* v. *Territory,* 14 Okl. 593: 78 Pac. 88), were filed prior to the decision in *Crain* v. *United States,* 162 U. S. 625 (16 Sup. Ct. 952: 40 L. Ed. 1097), in which, although the omission of the plea was there raised for the first time, the court fully sustain the rule here insisted upon by defendant. The statute under which the defendant in that case was tried is, on all material points, similar to the Criminal Code of this State, including, also, provisions to the same purpose as Sections 1404 and 1484, B. & C. Comp., to the effect that any technical errors and imperfections or departure from the form or mode prescribed by the Code shall be disregarded unless it actually prejudiced or tends to the prejudice of the defendant. Mr. Justice HARLAN, speaking for the court, so clearly states the law on the subject, and gives such cogent reasons for the doctrine announced, that we quote extensively therefrom as follows: "The views we have expressed would seem to be the necessary result of Section 1032 of the Revised Statutes,* which provides: 'When any person indicted for an offense against the United States, whether capital or otherwise, upon his arraignment stands mute or refuses to plead or answer thereto, it shall be the duty of the court to enter the plea of not guilty on his behalf in the same manner as if he had

pleaded not guilty thereto. And when the party pleads not guilty, or such plea is entered as aforesaid, the cause shall be deemed at issue, and shall, without further form or ceremony, be tried by a jury.' This statute is based on Act April 30, 1790, c. 9, § 30, 1 Stat. 119.; Act March 3, 1825, c. 65, § 14, 4 Stat. 118; and Act March 3, 1835, c. 40, § 4, 4 Stat. 777. It proceeds upon the established principle that before a criminal trial can be legally commenced there must be an issue to try, and that a plea by or for the accused is essential to the formation of the issue. And the section above quoted requires the entry of the plea before the trial commences. Where the crime charged is infamous in its nature, are we at liberty to guess that a plea was made by or for the accused, and then guess again as to what was the nature of that plea? Neither sound reason nor public policy justifies any departure from settled principles applicable in criminal prosecutions for infamous crimes. Even if there were a wide divergence among the authorities upon this subject, safety lies in adhering to established modes of procedure devised for the security of life and liberty. Nor ought the courts, in their abhorrence of crime, nor because of their anxiety to enforce the law against criminals, countenance the careless manner in which the records of cases involving the life or liberty of an accused are often prepared.

Before a court of last resort affirms a judgment of conviction of, at least, an infamous crime, it should appear affirmatively from the record that every step necessary to the validity of the sentence has been taken. That cannot be predicated of the record now before us. We may have a belief that the accused, in the present case, did, in fact, plead not guilty of the charges against him in the indictment. But this belief is not founded upon any clear, distinct affirmative statement of record, but upon inference merely. That will not suffice. We are of opinion that the rule requiring the record of a trial for an infamous crime to show affirmatively that it was demanded of the accused to plead to the indictment, or that he did so

plead, is not a matter of form only, but of substance in the administration of the criminal law. Consequently such a defect in the record of a criminal trial is not cured by Section 1025 of the Revised Statutes,* but involves the substantial rights of the accused. It is true that the constitution does not, in terms, declare that a person accused of crime cannot be tried until it be demanded of him that he plead, or unless he pleads, to the indictment. But it does forbid the deprivation of liberty without due process of law, and due process of law requires that the accused plead, or be ordered to plead, or, in a proper case, that a plea of not guilty be filed for him, before his trial can rightfully proceed, and the record of his conviction should show distinctly, and not by inference merely, that every step involved in due process of law, and essential to a valid trial, was taken in the trial court. Otherwise the judgment will be erroneous. The suggestion that the trial court would not have stated, in its order, that the jury was sworn to try and tried 'the issue joined,' unless the defendant pleaded, or was ordered to plead, to the indictment, cannot be made the basis of judicial action without endangering the just and orderly administration of the criminal law. The present defendant may be guilty, and may deserve the full punishment imposed upon him by the sentence of the trial court. But it were better that he should escape altogether than that the court should sustain a judgment of conviction of an infamous crime where the record does not clearly show that there was a valid trial." A dissenting opinion appears by Mr. Justice PECKHAM, who not only holds it should be presumed a plea was entered without that fact affirmatively appearing in the record, but, like all the courts sustaining that view, appears to entirely overlook the fact that the statute expressly makes a plea essential to an issue, and that without such a plea it would necessarily result in the conviction of the person charged with a crime without an issue having been tried, and also fails to take into consideration the further important feature that the public is interested in seeing that a person is not deprived of either life or liberty without a trial in the manner prescribed by law.

The authorities sustaining the principles enunciated in *Crain* v. *United States,* and here recognized, are numerous, among which are 4 Bl. Comm. pp. 322, 323, 341; 1 Bishop, New Cr. Proc. §§ 733, 801; Wharton, Am. Crim. Law, § 530; *Crain* v. *United States,* 162 U. S. 625 (16 Sup. Ct. 952: 40 L. Ed. 1097); *Hopt.* v. *United States,* 110 U. S. 579 (4 Sup. Co. 202: 28 L. Ed. 262); *Shelp* v. *United States,* 81 Fed. 694 (26 C. C. A. 570); *Childs* v. *State,* 97 Ala. 49 (12 South. 441); *Territory* v. *Blevins,* 4 Ariz. 68 (77 Pac. 616); *People* v. *Corbett,* 28 Cal. 328; *People* v. *Monaghan,* 102 Cal. 229 (36 Pac. 511); *Ray* v. *People,* 6 Colo. 231; *Hoskins* v. *People,* 84 Ill. 87 (25 Am. Rep. 433); *Parkinson* v. *People,* 135 Ill. 401 (25 N. E. 764: 10 L. R. A. 91); *Dansby* v. *United States,* 2 Ind. T. 456 (51 S. W. 1083); *Hicks* v. *State,* 111 Ind. 402 (12 N. E. 522); *State* v. *Baker,* 57 Kan. 541 (46 Pac. 947); *State* v. *Chenier,* 32 La. Ann. 103; *State* v. *Hunter,* 43 La. Ann. 157 (8 South. 624); *State* v. *Brackin,* 113 La. 879 (37 South. 863); *Commonwealth* v. *Hardy,* 2 Mass. 303; *Sartorious* v. *State,* 24 Miss. 602; *Hill* v. *People,* 16 Mich. 351; *Grigg* v. *People,* 31 Mich. 471; *State* v. *Vanhook,* 88 Mo. 105; *State* v. *Saunders,* 53 Mo. 234; *Beck* v. *United States,* 145 Fed. 625 (76 C. C. A. 417); *Barker* v. *State,* 54 Neb. 53 (74 N. W. 427); *Browning* v. *State,* 54 Neb. 203 (74 N. W. 631); *Hill* v. *State,* 1 Yerg. 76 (24 Am. Dec. 441); *Jefferson* v. *State,* 24 Tex. App. 535 (7 S. W. 244); *Douglass* v. *State,* 3 Wis. 820; *People* v. *Heller,* 2 Utah, 133; *Davis* v. *State,* 38 Wis. 487; *Elick* v. *Territory,* 1 Wash. T. 136.

It is true that the statute making a plea essential to an issue is merely declaratory of the common law, but the fact that it does so merely supplements the reason for holding to the well established landmarks in this particular, for it is evident from the embodiment of this provision in our code that this requirement is deemed by the lawmaking bodies of the country a wise one, and, if wrong, the power to effect the change is, and should remain, a legislative and not a judicial function. The statute, by its terms, has expressly declared the entry of a plea to be

essential to an issue, and its language in this respect being clear and free from doubt, we must recognize its provisions so long as in force.

The judgment of the court below should be reversed, and a new trial ordered.                                              REVERSED.